IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
October 7, 2025 Session

## STATE OF TENNESSEE v. RICHARD KINSINGER, JR.

**Appeal from the Criminal Court for Shelby County**
No. 21-00567     Paula Skahan, Judge

_____

### No. W2024-001176-CCA-R3-CD
_____

In 2021, the Defendant, Richard Kinsinger, Jr., pleaded guilty to sexual battery by an authority figure, and the trial court sentenced the Defendant to serve six months in confinement and five years on probation. On appeal, the Defendant asserts that the trial court erred when it sentenced him. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, P.J., delivered the opinion of the court, in which TIMOTHY L. EASTER, and JOHN W. CAMPBELL, SR., JJ., joined.

Michael Working (at trial) and Joseph S. Ozment (on appeal), Memphis, Tennessee, for the appellant, Richard Kinsinger, Jr.

Jonathan Skrmetti, Attorney General and Reporter; Raymond J. Lepone, Senior Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Venecia Patterson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

This case arises from the Defendant's sexual contact with the victim, who, along with her mother, lived with the Defendant when she was ten years old. For his conduct, the Defendant was indicted for aggravated sexual battery and soliciting sexual exploitation of a minor.

### A. Guilty Plea

The State recited the following facts as the basis for the plea:

[A]s reported by [the victim] that she was inappropriately touched by her mother's friend, [the Defendant] while they were in a hot tub at 404 Goodland Street. The incidents occurred in March, 2020. [The victim] was 10 years old and [the Defendant] was 64 years old when the incidents occurred. [The victim] had a forensic interview and disclosed that one day she and [the Defendant] were in the hot tub outside and [the Defendant] was nude. She stated that [the Defendant] wrapped his legs around her and pulled her close to him by using his legs and hands. She stated that [the Defendant] took off her shorts and panties. [The victim] told the interviewer that [the Defendant's] private part, which she identified as his penis, touched her private part, which she listed as her vagina. She stated that no penetration occurred.

She described [the Defendant's] penis as big and hard when it touched her vagina. She stated that [the Defendant] was breathing heavily and was moaning. She stated that her mother was inside of the house. She stated that her mother walked by the window and [the Defendant] let her go and acted like everything was casual. Her mother did not see anything. And [the victim] stated that [the Defendant] told her that it was their little secret.

[The victim] said the second time when she and [the Defendant] were in the hot tub, [the Defendant] put his hand on top of her private part. She stated that he rubbed his two fingers on top of the private part over her clothing and that it felt weird and disgusting. [The victim] stated that [the Defendant] stopped rubbing her private part and made her watch him masturbate. She said that white liquid came out of his penis while he masturbated. She stated that [the Defendant] grabbed her hand, placed his hand on top of her hand and made her rub her own private part. [The victim] stated that he also took her hand, placed her hand on his private part, his penis and made her rub his private part.

On this basis, the Defendant pleaded guilty to one count of sexual battery by an authority figure, in exchange for an agreed-upon sentence of five years, with the manner of service to be determined by the trial court, and for the State dismissing the remaining charge of soliciting sexual exploitation of a minor. The trial court inquired as to whether the Defendant understood that the trial court would be determining his sentence. The trial court inquired as to whether he understood the sentencing ranges and wished to enter his plea. The Defendant indicated that he was pleading guilty to save the victim and her mother from having to testify at trial and that he understood that meant he was giving up his right to a trial and to appeal his conviction. The Defendant indicated that he understood the trial

court would be choosing the manner in which he would be serving his five-year sentence. On this basis, the trial court accepted the Defendant's guilty plea.

## B. Sentencing

The trial court held a sentencing hearing, at which the Defendant's bail bondsman testified that the Defendant had fully complied with the conditions of his release. The Defendant's best friend testified that the Defendant had been a good friend and roommate. He recalled that the victim's mother lived with them during the pandemic and that the victim and her mother slept in the Defendant's bedroom with him.

The Defendant testified that he sat naked in his hot tub every night and agreed that one night the victim got in the hot tub with him. He denied touching her or that the victim was naked. On cross-examination, the Defendant agreed that he had been convicted of a prior felony, sexual battery. The Defendant stated that he had hugged the victim in the hot tub while he was nude.

At the conclusion of the hearing, the trial court made the following statement:

So, we have a ten-year-old [victim] brought into a home by her mother who was supposed to protect her and [as the Defendant said] I'm a gay man. I have no interest in children. It makes no difference. They're pedophiles. It doesn't make a difference if you're gay, straight whatever. People have interest in children.

I can't explain it. It doesn't make any difference, gay, straight, whatever. . . . . So, that argument does not hold any water with this Court whatsoever.

Anyway, [the victim] was brought into the home of [the Defendant], one of her mother's best friends. For whatever reason, [he's] her friend and she thinks she can trust him around her daughter, which was not true. And I completely agree that [the Defendant] molested [the victim] on this occasion when she thought she could trust [him].

And [the victim] went to the hot tub, got in the hot tub and [the Defendant] pulled him -- pulled her close to him using his legs and hugged her touching his penis on her vagina, which is straight up aggravated sexual battery.

3

It was reduced by the State based on the [victim's] and her grandparents['] wishes that she not have to come back here and see him again and relive this whole situation. Reduced to sexual battery by an authority figure, which at the time of this offense back in 2020 was probatable. It is no longer probatable -- well, it's no longer 100 percent service of sentence. It would have been had this occurred later. But anyway. [The Defendant] is asking this Court to suspend his sentence.

We've heard from Defense witnesses, [the bail bondsman] Mildred Battle. [The Defendant] followed all of his requirements while being on bond and she believes he will be a good candidate for probation. Heard from [the Defendant's best friend] Jarred Ray, who [] has known [the Defendant] for a number of years. [Mr. Ray] was a romantic partner and now is a roommate. Lives in the home for free as did [the] victim's mother. Gave some indication of the house. There are two bedrooms and [he said] that when [the victim and her mother] lived there [] that they would sleep in [the Defendant's] bedroom until apparently [the victim] disclosed that [allegation]. And again, it's a little confusing [] that [the Defendant] had [] put his hand in [the victim's] pants when [Mr. Ray] came up with the suggestion [for the victim to] sleep on the couch then or go back to your own apartment rather than why don't you call the police. Like any normal person would do. Call the police.

Certainly, get this child out of this home. And then a disclosure. I was in the hot tub and [the Defendant], you know, pulled me close to him and molested me. You know, just a house of horrors for this child. Nobody did anything. Nobody did anything. And then apparently a second occurrence, but we're not here about that. We're here about the occurrence apparently during the month of March 2020. And again, I do believe that happened.

So, whether or not [the Defendant] should be placed on probation, I have real serious doubts he should get any relief whatsoever. But looking at the statutory and case law requirements, as Mr. Working is requiring I go through here, [the Defendant] doesn't have a long history of criminal conduct. Whether confinement is necessary to avoid depreciating the seriousness. I think this is a very serious situation to pull a child close to you with an erect penis to pulling her pants down and -- well, it's an aggravated sexual battery. I think that's extremely serious. And normally a confinement is certainly necessary to avoid depreciating the seriousness of this offense.

4

. . . Sentence imposed should be no greater than that deserved of the offense committed. I think confinement is required on a situation like this. Whether the sentence imposed should be the least severe measure necessary to achieve the purposes to which sentence is imposed. Least severe measure necessary.

I mean, this -- I think a sentence of certainly some imprisonment is required and certainly [the Defendant] needs sex offender treatment.

Potential or lack of potential for rehabilitation should be considered. Certainly [the Defendant] again with somebody that can do this to a child, I don't know how much rehab at his age will really be effective. Encouraged to use alternatives to incarceration including reparation, victim compensation, community service. It's tough. I'm going to require some incarceration for [the Defendant]. It's just a question of how much. We do have a prior conviction. [The Defendant], you know, claims his young cousin came on to him, a 17-year-old coming on to a man in his 30's.

It makes absolutely no sense. And of course, he's been lying about the ten-year-old [victim]. I think [the Defendant] has a real problem with the truth. So, I don't believe him regarding that prior incident. This is five years at 30 percent. [The Defendant] would probably serve less than two years on this offense if he actually went into Shelby County Correctional Center. I'm going to require actual six months of jail time. I'll allow him to get his affairs in order; followed by probation for four and half years. Require him to complete sex offender treatment, gainful employment. I think we've already put down that he must register as a sex offender.

It is from this judgment that the Defendant appeals.

## II. Analysis

On appeal, the Defendant asserts that the trial court erred when it sentenced him. He contends that the trial court failed to consider the required sentencing principles and applicable circumstances and facts of the case and that this court should conduct a *de novo* review of the Defendant's sentence. He contends that he is a favorable candidate for an alternative sentence and should be granted a full probation sentence. The State responds that the trial court properly considered the purposes and principles of sentencing as they applied to the Defendant's conviction for a sexual offense against a minor, and that the trial court acted within its discretion when it ordered the Defendant to serve six months of his five-year sentence in incarceration. We agree with the State.

5

"[T]he abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). The defendant bears "the burden of showing that the sentence is improper." *Ashby*, 823 S.W.2d at 169. A trial court's decision regarding probation will only be invalidated if the court "wholly departed from the relevant statutory considerations in reaching its determination." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014). Under an abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Id*. at 475.

A defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed on the defendant is ten years or less. T.C.A. § 40-35-303(a) (2018). A defendant is not, however, automatically entitled to probation as a matter of law. The burden is upon the defendant to show that he or she is a suitable candidate for probation. T.C.A. § 40-35-303(b) (2018); *State v. Goode*, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

Regarding alternative sentencing, Tennessee Code Annotated section 40-35-102(5) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration.

There is no bright line rule for determining when a defendant should be granted probation. *Bingham*, 910 S.W.2d at 456. Every sentencing decision necessarily requires a case-by-case analysis considering "the nature of the offense and the totality of the circumstances . . . including a defendant's background." *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991) (quoting *State v. Moss*, 727 S.W.2d 229, 235 (Tenn. 1986)). In determining if incarceration is appropriate in a given case, a trial court should consider whether:

6

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103(1) (2018). "When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public." *State v. Cathey*, No. E2015-01284-CCA-R3-CD, 2016 WL 2641766, at *3 (Tenn. Crim. App., May 6, 2016) (citations omitted). The court should also consider the defendant's truthfulness. *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103.

In this case, the trial court granted, in part, the Defendant's request for an alternative sentence, but ordered the Defendant to serve a portion of his sentence in incarceration. The trial court did this based on the facts surrounding the case, the best interest of the victim, the seriousness of the offense, as well as the fact that the Defendant had a prior conviction involving a sexual offense against a minor. Based on these multiple factors, and in light of its consideration of the required factors when determining the need for confinement, we conclude that the trial court did not abuse its discretion when it ordered the Defendant to serve six months of his five-year sentence in incarceration. The Defendant is not entitled to relief as to this issue.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the judgment of the trial court.

_s/ *ROBERT W. WEDEMEYER*__
ROBERT W. WEDEMEYER, JUDGE